## Commonwealth v. Rieck Investment Corporation

*Carl H. Cordes*, for appellant.

*Vincent X. Yakowicz*, for Commonwealth.

SHELLEY, J., July 6, 1964.—This is an appeal by a foreign corporation authorized to do business in Pennsylvania from the resettlement of its corporation franchise tax account for the year ended December 31, 1956. The case was tried without a jury and upon a stipulation of facts agreed to by the parties. We adopt the stipulation as our findings of fact and incorporate the same herein by reference. In the course of our opinion we will discuss those facts which, in our judgment, are essential to the disposition of this case.

The Rieck Investment Corporation, hereinafter referred to as the appellant, was incorporated under the laws of the State of Delaware on June 18, 1923. During the year ended December 31, 1956, under its corporate powers, it was engaged in the business of buying, selling and holding securities and other property, including real estate, for investment purposes. Appellant's tangible property for the calendar year 1956 consisted of two unimproved lots in Florida, having a book value of $8,802, and office equipment and fixtures situate in appellant's office in Pittsburgh, having a book value for the year 1956 of $1,695, making a total value of its tangible property of $10,497. The only office of appellant was located in the city of Pittsburgh, Pa., where all of its books, records, securities and bank accounts were located.

Appellant filed its franchise tax report for the year ended December 31, 1956, wherein it reported the value of its capital stock at $4,000,000 and applied a tangi-

ble property fraction of $\frac{1.695}{10,497}$, the denominator of which included the book value of the Florida real estate. All wages and salaries and gross receipts were assignable to Pennsylvania. The Commonwealth, in resettling the franchise tax, appraised the value of the capital stock of appellant at $5,500,000 and determined the tangible property fraction to be $\frac{1.695}{1.695}$, having eliminated from the denominator of the tangible property fraction the book value of the Florida real estate.

The controversy in this appeal involves a determination of the intention of the legislature when it amended the Act of June 1, 1889, P. L. 420, by the Act of May 16, 1935, P. L. 184, 72 PS §1871,[1] wherein subsection (b) was added to section 21. Subsection (b) provides that:

"(b) Every foreign corporation, joint-stock association, limited partnership, and company whatsoever, from which a report is required under the twentieth section hereof, shall be subject to and pay into the treasury of the Commonwealth annually, through the Department of Revenue, a franchise tax at the rate of five mills upon a taxable value to be determined in the following manner. The actual value of its whole capital stock of all kinds, including common, special, and preferred, shall be ascertained in the manner prescribed in the twentieth section of this act, and shall then be divided into three equal parts.

"(1) Of one third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said third by a fraction, whose numerator is the value of the taxpayer's tangible property not actually and exclusively used in manufacturing, situated within the Commonwealth, and

---

[1] Commonly referred to as the Franchise Tax Act as it was effective for the year ended December 31, 1956.

whose denominator is the value of all the taxpayer's tangible property wherever situated.[2]

"(2) . . .
"(3) . . .
. . ."

It is the position of the Commonwealth that appellant is transacting its entire business in Pennsylvania and because it is not "doing business" outside of Pennsylvania, it is not entitled to allocate any of the business or any of the value of its franchise.

Appellant contends that in the ascertainment of taxable value under the Act of 1889, supra, as amended, the legislature intended to make no distinction between foreign corporations *"doing business"* [3] in a foreign State and foreign corporations *not "doing business"* in a foreign State, and that in both situations the legislature intended that the denominator of the tangible property fraction include the value of all taxpayer's tangible property wherever situated.

It is well settled in Pennsylvania that in construing a taxing statute, the entire taxing statute must be strictly construed and any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer: Commonwealth v. Allied Building Credits, Inc., 385 Pa. 370 (1956). See also article IV, sec. 58(3) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558.

It is also well established that the intention and meaning of the legislature must primarily be determined from the language of the statute itself and not from conjectures aliunde. When the language of a statute is plain and unambiguous and conveys a clear

---

[2] The words "not actually and exclusively used in manufacturing" were added to section 21(b) (1) by the amending Act of May 27, 1943, P. L. 762.

[3] Italics supplied unless otherwise noted.

and definite meaning, the statute must be given its plain and obvious meaning. This principle is to be adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the legislature intended to enact something very different from that which it did: Farmers-Kissinger Market House Company, Inc. v. Reading, 310 Pa. 493, 498 (1933).

This principle applies even where, by the use of clear and unequivocal language, capable of only one meaning, anything is enacted by the legislature, it must be enforced, even though it is absurd and mischievous. If the words go beyond what was probably the intention, effect must nevertheless be given to them. It is not the duty of the court to make the law reasonable, but to expound it as it stands, according to the real sense of the words . The legislature must be intended to mean what it has plainly expressed and it matters not, in such a case, what the consequences may be: Orlosky v. Haskell, 304 Pa. 57, 62 (1931).

By the use of the words *"every foreign corporation"* in subsection (b), it is clear that the legislature meant without exception all foreign corporations from which reports are required and the word "whatsoever" adds emphasis to that meaning. It is apparent that the legislature intended all foreign corporations to pay a tax upon a "taxable value" and there is nothing in the act which makes any distinction between foreign corporations doing business in Pennsylvania on the basis of whether or not they are also doing business in a foreign State.

The legislature's use of the words *"as shall be found"* in subsection (b) (1) indicates an intent that the use of the tangible property fraction be mandatory in ascertaining taxable value and that the denominator of the fraction be composed "of all the taxpayer's tangible property *wherever situated"*.

After setting forth the elements of the remaining allocation fractions,[4] the act further provides "the sum of the amounts determined in accordance with the foregoing three rules shall be the taxable value." This leaves no doubt that the legislature intended that the tax be found by means of the statutory formula and that the value subject to tax be ascertained in all cases by means of the formula. No other test of taxable value is authorized by the act.

We agree, as contended by the Commonwealth, citing Commonwealth v. Koppers Company, Inc., 397 Pa. 523, 531 (1959), that the fractions as used in the Corporate Net Income Tax Act [5] are the same as those used in the Franchise Tax Act. However, the application of the fractions is not the same. The Corporate Net Income Tax Act is applicable to all corporations, foreign and domestic, doing business in Pennsylvania, or having capital or property employed or used in Pennsylvania. The Franchise Tax Act, on the other hand, is applicable to every foreign corporation required to file a report with the Commonwealth whether or not it is doing business outside of the Commonwealth.

Had the legislature intended that the allocation fractions be applied only in cases where a foreign corporation is *"doing business"* in a foreign State, it would have so provided. In contrast to the Franchise Tax Act, the Corporate Net Income Tax Act, supra, section 2, subsection (2), as amended, is prefaced by the following provisions:

"2. In case the entire business of any corporation, . . . is not transacted within this Commonwealth, the tax imposed by this act shall be based upon such portion of the net income of such corporation for the fiscal

---

[4] Subsections (2) and (3) of section (b).

[5] Act of May 16, 1935, P. L. 208, as amended, 72 PS §3420(b).

or calendar year, as defined in clause one hereof, as may be determined by allocations and apportionments made as follows:"

The Franchise Tax Act contains no similar provision, and the omission of such a provision in the Franchise Tax Act cannot be supplied by statutory construction. In Altieri v. Allentown Officers' and Employees' Retirement Board, 368 Pa. 176 (1951), at page 181, the court stated that what the legislature failed to include in a statute, a court may not add. In Olyphant Borough School District v. American Surety Co., 322 Pa. 22 (1936), at page 28, the court said:

"It is not for us, by interpretation, to add to the statute a requirement which the legislature did not see fit to include."

In Kusza v. Maximonis, 363 Pa. 479 (1950), at page 482, the court said:

"In construing a statute, the court must ascertain and give effect to the legislative intention as expressed in the language of the statute, and cannot, under its powers of construction, supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted."

Inasmuch as the legislature did not restrict the use of the allocation fractions in the Franchise Tax Act to corporations "doing business" in a foreign State, appellant is entitled to use the statutory formula even though it was not "doing business" in a foreign State.

Considering what we have said above, the question of whether or not appellant was doing business in Florida need not be determined.

We therefore make the following

*Order*

And now, July 6, 1964, the Commonwealth is directed to recompute appellant's franchise tax for the year ended December 31, 1956, in accordance with this

opinion and, with notice to appellant's counsel, submit appropriate order for judgment within 10 days of this date.